### SOUTHERN PAC. CO. v. H. MOFFAT CO.
### No. 137.

District Court, D. Nevada.
July 18, 1942.

Brown & Belford, of Reno, Nev., for plaintiff.

Thatcher & Woodburn, of Reno, Nev., for defendant.

NORCROSS, District Judge.

This action was brought by plaintiff to recover charges for feeding, watering and resting cattle and sheep, in interstate transportation, at yards for that purpose, owned by plaintiff at Sparks, Nevada, during the years 1938, 1939 and 1940. Plaintiff bases right of recovery on the provisions of Title 45 U.S.C.A. §§ 71 and 72, and 49 U.S.C.A. §§ 1, 2, 3, 6 and 10. Judgment is demanded in the amount of $3,580.81. Defendant, by its answer, denies any liability for the said charges, and prays that plaintiff take nothing by its complaint and that the same be dismissed. By way of counterclaim, defendant prays for decree of this Court that a certain contract and supplements thereto, between plaintiff and Western Livestock and Service Company, a corporation, be declared void and annulled and that plaintiff be enjoined from entering into any contract similar in character. A similar suit was instituted against Union Sheep Company, a corporation, for judgment in sum of $3,188.77. As the two suits involved the same questions of fact and law, they were consolidated for trial.

The controlling facts are not in dispute and, briefly stated, are as follows:

The City of Sparks, Nevada, is the last westward division point between Ogden, Utah, and Sacramento, California, on the line of the Central Pacific Railroad, which railroad, now, and for many years past, has been owned and controlled by plaintiff. At Sparks are feeding corrals and equipment, owned by plaintiff, designed to effect compliance with the feeding in transit law, of the present estimated value of $85,000. On January 10, 1933, plaintiff entered into a written contract with Western Livestock Service Company, then a recently organized Nevada Corporation, by the terms of which said company, referred to therein as "Contractor," should operate said corrals and perform the legal requirements of plaintiff, referred to therein as Railroad, in providing rest, feed and water for livestock in transit over its railroad. By the terms of the contract, Railroad was to furnish at its own cost and expense all water necessary, all electric current, light bulbs and other supplies necessary for illumination of corrals; stationery and forms necessary for records and reports. Contractor was to pay an annual rental for said corrals and equipment in the amount of Ten ($10) Dollars. Contractor was to furnish all labor for cleaning, disinfecting, sanding or bedding livestock cars, feeding, loading, unloading, watering and otherwise caring for livestock handled at said corrals for which service Railroad shall pay to Contractor a certain specified "tariff". The contract further provides that Contractor "shall furnish for the livestock handled through said corrals * * * feed of good quality * * *. Compensation for feed actually furnished by Contractor for livestock in transit shall be advanced to it by Railroad * * *, and such amount shall be collected by Railroad as advances from the owners of the livestock in question. Railroad shall pay to Contractor for such feed furnished at the following rates: (a) Hay furnished by Contractor, Twenty-Five ($25.00) Dollars per ton of 2,000 pounds for any and all feedings; (b) * * *. Contractor shall afford fair and just treatment to all patrons without preference or discrimination." Certain modifications were made in the contract from time to time so that prior to December 1, 1938, the price for hay feed was $26 per ton and then restored to $25 per ton. The actual cost of the hay to Contractor delivered at said yards, during the three years in question, varied from a minimum of $11 to a maximum of $12.75 per ton. The Western Livestock Service Company is owned by Swift and Company and Armour and Company, corporations owning respectively 80% and 20% of the capital stock thereof, which latter companies are, also, transporters of cattle and sheep in interstate commerce over plaintiff's railroad through Sparks, Nevada. The said contract was entered into upon the request of Swift and Company. The general books of account of the Western Livestock Service Company were at all times, in question, handled in the corporate accounting department of Swift and Company at its office in Chicago, Illinois, based on reports made from Sparks, Nevada. The total amount of hay feed sales for the three years in question is reported to be 2447

tons and the price received therefor $61,984.78. In the printed list of tariffs filed by plaintiff with the Interstate Commerce Commission covering service charges for rest, feeding and water for livestock in transit, the charge for hay for feeding does not specifically appear. Section 3, thereof reads: "The rates in this Tariff do not include the cost of the feed nor the service charges specified in this item, except as otherwise expressly provided. Agent at feeding station must note on way bill amount of each kind of feed furnished and the amount charged for each, together with the amount of service charge, and * * * must be entered on way bill as 'Feed and Service Charge.'" During the years 1938, 1939 and 1940, Swift and Company received cash dividends from Western Livestock Service Company based on profits, made from the Railroad stockyard operations at Sparks, Nevada, in the sum of $9,742.

Such portions of the Federal statutes as are deemed controlling of the questions of law presented are here quoted:

T. 45 U.S.C.A. Railroads. "Section 71. No railroad * * * over which cattle, sheep * * * shall be conveyed from one State * * * into or through another State * * * shall confine the same in cars * * * for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, * * * it being the intent of this chapter to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated. * * *"

"§ 72. Animals so unloaded shall be properly fed and watered during such rest either by the owner or * * * by the railroad, * * * at the reasonable expense of the owner * * *, collectible at their destination in the same manner as the transportation charges are collected, * * *."

T. 49 U.S.C.A. Transportation. Interstate Commerce Act. "§ 1, par. (5) All charges made for any service rendered or to be rendered in the transportation of passengers or property * * * or in connection therewith, shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful: * * *"

"§ 2. If any common carrier subject to the provisions of this chapter shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered or to be rendered, in the transportation of passengers or property, * * * than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is prohibited and declared to be unlawful." (As amended 1935)

"Section 3, par. (1). It shall be unlawful for any common carrier * * * to make, give, or cause any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, association, * * * in any respect whatsoever; or to subject * * * to any undue or unreasonable prejudice or disadvantage in any respect whatsoever: * * *." (As amended 1935.)

"§ 6, par. (7). No carrier, * * * shall engage or participate in the transportation of passengers or property, * * * unless the rates, fares, and charges upon which the same are transported * * * have been filed and published * * *; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation * * *, or for any service in connection therewith, * * * than the rates * * * specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation * * *, except such as are specified in such tariffs."

■ It is clear from the terms of the contract made with Western Livestock Service Company that plaintiff thereby effected a means by which Swift and Company, as a shipper of livestock through the Sparks yards, could not only obtain service for rest, feeding and watering of its own livestock, so in transit, at actual cost but in addition thereto make a substantial profit, in the performance of similar required services, upon the part of plaintiff, for other shippers of livestock. This presents a situ-

ation clearly in violation of the sections of the statutes above quoted and the general principle of law controlling in transportation in Interstate Commerce. Merchants' Warehouse Co. v. United States, 283 U.S. 501, 511, 51 S.Ct. 505, 75 L.Ed. 1227; Aron v. Pennsylvania R. R. Co., 2 Cir., 80 F.2d 100, 103 A.L.R. 1367, certiorari denied 298 U.S. 658, 56 S.Ct. 680, 80 L.Ed. 1384; Pennsylvania R. Co. v. Swift & Co., 3 Cir., 4 F.2d 61; Pennsylvania R. Co. v. Swift & Co., 3 Cir., 258 F. 289; Pennsylvania R. Co. v. Swift & Co., D.C., 248 F. 315; Oregon-Washington R. & N. Co. v. United States, 9 Cir., 205 F. 337.

■■ It is the conclusion of the Court that plaintiff is not entitled to recover from defendant an amount in excess of the actual net cost to Western Livestock Company for the services rendered by it on account of defendant's said livestock shipments, or an amount in excess of the actual net cost to Swift and Company, for similar services, during the time in question. The evidence now before the court is not sufficient to determine what such amounts may be. The prayer of defendant's counterclaim may not be considered for the reason that Western Livestock Company is not a party to this action.

The submission of the case is vacated subject to the right of plaintiff and defendant to submit further evidence.